IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TRACY STEWART,

      Plaintiff,                     No. CIV S-06-1333 JAM GGH P

    vs.

KEITH HIGGINS, et al.,

      Defendants.              FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. On August 13, 2008, defendant Higgins filed a motion to dismiss, to which plaintiff filed an opposition and defendant thereafter filed a reply.

Complaint

        This action proceeds on the original complaint, filed on June 16, 2006 (6/16/06), as subsequently modified, against defendants Keith Higgins and Tevin Tiang Trong.[1] On

---

[1] By order, filed on 11/07/06, plaintiff's claims as to two defendants were found to be cognizable but as to several other defendants were dismissed with leave to amend. Plaintiff was granted an extension of time to filed an amended complaint, in an order, filed on 1/03/07; thereafter, plaintiff was liberally granted a further extension of time by order, filed on 5/31/07. Upon screening the amended complaint, filed on 7/02/07, the court recommended that it be dismissed without further leave to amend and that the matter proceed on the original complaint

1

7/24/05, in A-5 Facility, defendant Higgins, claiming to have been gassed by plaintiff during tray pick-up, immediately closed plaintiff's tray slot.  Complaint, p. 4.  A minute later defendant Higgins re-opened the tray slot and pepper-sprayed plaintiff, after much taunting by his co-worker, defendant Tiang Trong, urging Higgins to "Spray him. Spray him."  Id.  Plaintiff contends that whatever may have occurred previously, there was no justification for pepper-spraying him as the situation was under control when the tray slot was closed.  Id.  Because plaintiff did not trust the building officers, he refused to be de-contaminated and examined when an M.T.A. (Rivera) asked him if he wanted to do so.  Id.

    The next day, on 7/25/05, defendant Higgins returned to feed plaintiff his breakfast, throwing the brown paper bag to the floor of plaintiff's cell and threatening to break plaintiff's neck when he came out of his cell.  Complaint, pp. 4-5.  Defendant Higgins failed to identify any witness on the tier to the incidents of either 7/24/05 or 7/25/05.  Id., at 5.  Plaintiff was moved from A-5 to B-1 Facility by a Sergeant Kukrall on 7/25/05 to separate plaintiff from defendant Higgins and other A-5 Facility officers due to the incidents above.  Id.

    When plaintiff was asked to move back to A-5 in October or November, plaintiff refused because he had filed a complaint about the assault and threat made by defendant Higgins on 7/24/05 and 7/25/05.[2]  Id.  In December of 2005, plaintiff was ordered back to A-5, but was returned to B-1 the next day.  Id.  Plaintiff was ordered back to A-5 Facility again in January of 2006.  Id., at 6.  Upon his return, plaintiff claims that his property was immediately separated and lost by second watch correctional officers.  Id.  Plaintiff explained that he needed his high blood pressure medication which was with his lost property and later that night his property was

---

only as to defendants Keith Higgins and Tevin Tiangtrong. The 3/10/08 Findings and Recommendations, were adopted by Order, filed on 9/24/08.

 [2] In the grievance filed by plaintiff, Log no. SAC-05-01611, plaintiff appears to compress the relevant events into one day, 7/24/05, including both the pepper-spraying and the threats by defendant Higgins.  Opposition (Opp.), pp. 4-5, 18-20; Motion to Dismiss (MTD), pp. 27-29; 34-36.

returned to him, scattered on a cart. Id. The following morning defendant Higgins fed plaintiff breakfast. Id. When plaintiff later asked defendant Higgins to see a doctor for dark blood in his urine, Higgins refused and also refused to give plaintiff his lunch. Id. Plaintiff later showed MTA Rivera the bloody urine and was told that it would be documented. Id.

When plaintiff indicated that he wanted to go out to the yard, either Higgins or another correctional officer (who had assisted Higgins) whispered in the ear of the yard officer and all the yard officers then refused to allow plaintiff out to the yard. Complaint, pp. 6-7. Later that day, January 6th, plaintiff was given his lunch, after explaining that he had been denied it to a Lieutenant Aiken who came to the building for plaintiff's 115 hearing. Id., at 7. When plaintiff asked why he had been moved back to the building where Higgins worked when plaintiff had a complaint against him for threats, assault and harassment, plaintiff was moved to A-7 and given yard. Id.

After being transferred to Tehachapi for about 20 days, plaintiff was returned on 3/13/06 to A-7 block, and about a month later, on 4/10/06, defendant Higgins moved to the same block on which plaintiff was housed. Id. Plaintiff made requests to several correctional officers, in fear for his safety, to be moved, but they refused. Id. After an encounter with Lieutenant Akins, who ordered plaintiff back to his cell, plaintiff was taken to the ground by a correctional officer claiming plaintiff was resisting. Id., at 7-8. Plaintiff was nevertheless apparently moved that day to A-6, but his property turned up in a plastic, ripped and rain-damaged bag with his legal papers and other property destroyed and medication missing, a further form of retaliation by defendant Higgins. Id., at 8. The next day, 4/11/06, plaintiff was so depressed he had to speak to the Psych Dr. Baxter, to explain how the constant harassment and moving took its toll on him mentally. Id.

Motion to Dismiss

Defendants move for dismissal pursuant to non-enumerated Rule 12(b) of the Federal Rules of Civil Procedure for plaintiff's alleged failure to exhaust his administrative

remedies for a claim of retaliation by defendant Higgins before bringing suit. Motion to Dismiss (MTD), pp. 1-7.

*Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*

In a motion to dismiss for failure to exhaust administrative remedies under non-enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of raising and proving the absence of exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The parties may go outside the pleadings, submitting affidavits or declarations under penalty of perjury, but plaintiff must be provided with notice of his opportunity to develop a record. Wyatt v. Terhune, 315 F.3d at 1120 n.14. The court provided plaintiff with such fair notice by Order, filed on 5/07/08.

Should defendants submit declarations and/or other documentation demonstrating an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing. Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to the court's attention those parts of the complaint upon which plaintiff relies. If the court determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate remedy for non-exhaustion of administrative remedies. Wyatt v. Terhune, 315 F.3d at 1120.

*PLRA Requirements*

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Inmates seeking injunctive relief must exhaust administrative remedies. Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999). In Booth v. Churner, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that inmates must exhaust administrative remedies, regardless of the relief offered through administrative procedures. Therefore, inmates seeking money damages must also completely

exhaust their administrative remedies. Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (inmates seeking money damages are required to exhaust administrative remedies even where the grievance process does not permit awards of money damages). The United States Supreme Court has held that exhaustion of administrative remedies under the PLRA requires that the prisoner complete the administrative review process in accordance with the applicable procedural rules. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378 (2006). Thus, in the context of the applicable PLRA § 1997e(a) exhaustion requirement, any question as to whether a procedural default may be found should a prisoner plaintiff fail to comply with the procedural rules of a prison's grievance system has been resolved: the PLRA exhaustion requirement can only be satisfied by "proper exhaustion of administrative remedies....," which means that a prisoner cannot satisfy the requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Woodford v. Ngo, supra, at 84, 126 S. Ct. at 2382. Moreover, 42 U.S.C. § 1997e(a) provides that no action shall be brought with respect to prison conditions *until* such administrative remedies as are available are exhausted. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

*Administrative Exhaustion Procedure*

In order for California prisoners to exhaust administrative remedies, they must proceed through several levels of appeal: 1) informal resolution, 2) formal written appeal on a CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4) third level appeal to the Director of the California Department of Corrections. Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, § 3084.5). A final decision from the director's level of review satisfies the exhaustion requirement. Id. at 1237-38.

*Discussion*

Defendants acknowledge that plaintiff exhausted his administrative claims as to his excessive force allegations arising from the July, 2005 incident, involving defendants Higgins and Tiang Trong. Motion to Dismiss (MTD), pp. 6, 47-48 (Ex. G - copy of director's level decision

5

1 for Log no. SAC 05-01611 (IAB no. 0507224) - dated 4/04/06 & granted in part. However, defendants observe that this grievance was initiated on 8/22/05, some five months before the alleged retaliatory actions by Higgins took place in January, 2006 and beyond. Id. at 6.

Plaintiff claims that a retaliation claim was encompassed within his grievance Log no. SAC 05-01611. Opposition (Opp.), p. 12. Whether this is so or not, plaintiff could not have encompassed within that appeal those incidents alleged to have occurred after the initiation of that grievance.

The exhibits submitted show that plaintiff filed nine grievances between January of 2006 and June 16, 2006, when this complaint was filed. MTD, p. 6, Ex. A, Declaration of R. Carter, CSP-Sac appeals coordinator, ¶ 3. Of these only three appear to have concerned defendant Higgins' alleged retaliatory actions, at least dating from January, 2006. Id. & Exs. C, D & E. Plaintiff initiated his grievance with regard to the incidents in January, 2006, when defendant Higgins refused to allow plaintiff his lunch or yard access, in a grievance he signed on 1/11/06, Log no. SAC-S-06-0386, which bypassed the informal level of review and was denied at the first formal level of review on 2/23/06. MTD, Ex. A, Carter Dec., Ex. E, copy of Log no. SAC-S-06-0386. In a declaration by T. Emigh, Acting Chief of the Inmate Appeals Branch (IAB) in Sacramento, setting forth the five appeals by plaintiff accepted for director's level review between 1/04/06 and 1/26/07, none implicated the retaliatory events of 1/06/06 by defendant Higgins at issue herein, including refusing plaintiff his lunch or allowing him yard access. MTD, Ex. B.

Plaintiff also filed a grievance on 4/10/06, concerning the alleged assault by defendant Higgins on that day, as well as plaintiff's claim of lost and rain-damaged property. This grievance, Log no. SAC-C-06-0976, was partially granted at the first level (to the extent that an inquiry into plaintiff's allegations was conducted). MTD, Ex. A, p. 4, Ex. D, copy Log no. SAC-C-06-0976, including first level appeal response, dated 6/02/06 at the top of the page, but dated as signed on 6/16/06. There is no indication that this appeal ever processed beyond the first level appeal response, and even if it had, plainly it could not have been exhausted at the director's level

before the filing of the instant complaint on 6/16/06, necessarily rendering this action unexhausted as to the claims arising from April, 2006. McKinney v. Carey, supra, 311 F.3d 1198.

Plaintiff filed a grievance on 6/11/06, concerning defendant's alleged acts of retaliation, which was partially granted at the first level of review on 8/12/06, and which in any event would have been filed too late to be administratively exhausted prior to the filing of this complaint on 6/16/06. MTD, Ex. A, Ex. C, copy of Log no. SAC-S-06-1507.

Defendant contends that there are only two circumstances whereby an inmate can be excused from exhausting all steps of the administrative appeal process. Reply, p. 3. The first circumstance is when a prisoner's appeal has been fully granted before the final level of review. Id., citing Abney v. McGinnis, 380 F.3d 663, 669 ( 2d. Cir. 2004); Ross v. County of Bernalillo, 365 F.3d 1181, 1187 (10th Cir. 2004), abrogated on another ground by Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910 (2007); Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir. 2002). The second occasion is when an inmate is either explicitly told or regulations make clear that there is no further relief available. Id., citing Brown v. Valoff, 422 F.3d 926, 946 (9th Cir. 2005) (Judge Reinhardt's opinion concurring in part & dissenting in part). The majority opinion in Brown v. Valoff, 422 F.3d at 935, states simply that:

> [A] prisoner need not press on to exhaust further levels of review once he has either received all "available" remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available.

This court finds that there may also be another circumstance under which failure to process a grievance to the third, or director's, level would be excused: when prison officials refuse to process a properly submitted grievance or to timely respond. Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) (agreeing with the Fifth, Eighth, Seventh and Tenth Circuits in holding "that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance.")

\\\\\

7

1  Plaintiff, including, inter alia, a copy of the same grievance, Log no. SAC-S-06-
2  0386, submitted by defendant Higgins, claims that his grievance as to the incident in January,
3  2006, regarding being deprived of his lunch, yard and medical attention, was ignored. Opp., p. 5,
4  Ex. A, plaintiff's declaration, Ex. G (appeal copy). Plaintiff does not make clear why he did not
5  proceed to a second level of review when this appeal received a denial at the first formal level on
6  2/23/06. MTD, Ex. E; Opp., Ex. G.

7  Plaintiff includes copies of two letters to show he made "valiant efforts to process
8  [his] retaliation claims." Plaintiff's dec. in opp., Exs. C & D. In Ex. C, a note to a Ms. Dovey
9  from plaintiff references an unidentified "medical 602"and plaintiff's appeal objecting to a rules
10 violation report. In a postscript, plaintiff asks for a response to a 602 regarding defendant Higgins
11 about a property issue filed in early April. Plaintiff provides no log number in the note and is
12 apparently instructed to provide the log number since 49 appeals had been submitted to the
13 appeals office. The appeal plaintiff references in his post script, the only relevant one in this note,
14 is evidently Log no. SAC-C-06-0976, filed on 4/10/06, for which plaintiff received a first level
15 response on either 6/02/06 or 6/16/06, which indicates that it was processed as a staff complaint
16 appeal inquiry, and bypassed at least the informal level of review. Opp., Ex. H. Notwithstanding
17 the confusion of the dates of the first level partial grant appeal response, plaintiff does not make
18 clear why he did not seek a further review of the grievance. The statement included in the appeal
19 response is explicit:

> Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted.

24 MTD, Ex. D; Opp., Ex. H.

25  The second copy of a letter he includes is directed to Warden Walker and is dated
26 8/06/06. Opp., Ex. D. Plaintiff contends therein that he filed a 602 grievance as to the warden in

8

mid-June 2006, because his complaints against defendant Higgins and requests to be separated from Higgins and his co-workers and "continuously fell on deaf ears." Id. The letter focuses on his allegation that since the June 2006 filing of his grievance against the warden he was subjected to a transfer to Tehachapi although he was in the middle of a 115 hearing and that this could not have been done for safety reasons because when he returned in August, he was again placed in the same building with the Higgins, who had previously threatened his life. Id. Plaintiff goes on to complain of an incident occurring in August of 2006. Id.

While plaintiff indicates his frustration with what he believes has been an inadequate response to his grievances regarding defendant Higgins, plaintiff does not clarify how he was precluded from processing the grievances regarding Higgins' alleged retaliatory actions to the second and third levels of review. Plaintiff does not indicate that he was in any way prevented from proceeding up the review chain as to his grievances: Log no. SAC-S-06-0386 and Log no. SAC-C-06-0976, concerning plaintiff allegations arising from incidents in January, 2006 and April, 2006, respectively. Plaintiff's failure to exhaust administrative remedies as to his claims of retaliation against defendant Higgins in January of 2006 and April of 2006, should be dismissed and this complaint proceed only as to plaintiff's July, 2005, claims against defendants Higgins and Tiang Trong.

Accordingly, IT IS HEREBY RECOMMENDED that defendant Higgins' motion to dismiss for failure to exhaust administrative remedies, filed on 10/28/08 (Docket # 49) be granted as to plaintiff's claims of retaliation against defendant Higgins for incidents occurring in January of 2006 and April of 2006, and this action proceed only as to plaintiff's July 2005, claims against defendant Higgins and Tiang Trong.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 02/04/09                                      /s/ Gregory G. Hollows

                                                     UNITED STATES MAGISTRATE JUDGE

GGH:009
stew1333.mtd

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 02/04/09                                      /s/ Gregory G. Hollows

                                                     UNITED STATES MAGISTRATE JUDGE

GGH:009
stew1333.mtd